IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELEANOR P. CARRANZA,

      Plaintiff,                      No. CIV S-08-0934 DAD

      vs.

MICHAEL J. ASTRUE,               <u>ORDER</u>
Commissioner of Social Security,

      Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) on January 13, 2004, claiming disability based on asthma, arthritis in her joints, sciatic nerve pain, slipped disc, surgery that removed one-third of the meniscus of her left knee, osteoporosis, plantar fasciitis, and heel spurs, with an alleged onset date of July 23, 1991. (Transcript (Tr.) at 68-70, 80-89.) The application was denied initially and upon reconsideration

on dates that cannot be ascertained from the administrative record.[1]  A hearing was held before an administrative law judge (ALJ) on March 8, 2005.  (Tr. at 41, 336-43.)  The hearing was continued at plaintiff's request to permit her to obtain medical records and representation.  (Tr. at 342.)  On November 16, 2005, a second hearing was held, and plaintiff requested a second continuance to obtain representation.  (Tr. at 328-35.)  The ALJ declined to continue the hearing a second time and dismissed the case.  (Tr. at 334, 233-37.)  Plaintiff filed an untimely request for review of the ALJ's decision along with a statement claiming that the notice of the dismissal was mailed to her old address and was not forwarded to her until January 2006.  (Tr. at 238-41.)  On February 23, 2006, the Appeals Council determined that plaintiff should be given another opportunity for a hearing and remanded the case for that purpose.  (Tr. at 242-44.)

A remand hearing was held on July 5, 2006.  (Tr. at 320-27.)  Plaintiff appeared and stated that she had received no notice that her appeal had been granted and did not receive notice of the remand hearing until she received a telephone call two days prior to the hearing. She requested a continuance to obtain representation.  (Tr. at 322.)  The ALJ continued the hearing to permit plaintiff to obtain medical records and seek representation.  (Tr. at 325.)

A second remand hearing – the fourth hearing in the case – was held on May 11, 2007.  (Tr. at 276-319.)  Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert.  (Tr. at 276-77.)  In a decision dated October 22, 2007, the ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 1992.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 23, 1991 through her date last insured of March 31, 1992 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

---

[1] The dates of the denials do not appear to be documented in the present record. Defendant's motion does not mention the dates or cite the record on this point.  Plaintiff's motion does not mention dates, and the transcript pages cited do not include either the initial or reconsideration denial of plaintiff's 2004 application.

3. Through the date last insured, the claimant had the following severe impairments: Asthma, injury to lower back, and injury to shoulders, impacting her ability to reach with left upper extremity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work with the limitation that she be allowed to take asthma medication during the work day as needed. She also has slight non-exertional limitations in the following areas: reaching overhead with her left non-dominant upper extremity, fine and gross manipulation of her hands, and doing simple, routine repetitive tasks, with slight sometimes moderate pain.

6. Through the date last insured, the claimant was able to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on November 15, 1951 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564)

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 23, 1991, the alleged onset date, through March 31, 1992, the date last insured (20 CFR 404.1520(g)).

(Tr. at 18-24.)

On January 17, 2008, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 6-12.) Plaintiff's request for more time to file a civil action was granted on March 27, 2008. (Tr. at 5.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 1, 2008.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal

Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).
The five-step process has been summarized in the Ninth Circuit as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances three arguments in support of her motion for summary judgment.  She argues that (1) the ALJ failed to develop the record by securing Dr. Ridey's treatment records and failed to utilize the services of a medical advisor to establish the onset date of plaintiff's disability; (2) the ALJ failed to credit plaintiff's statements as to the nature and extent of her functional limitations; and (3) the ALJ failed to properly assess plaintiff's residual functional capacity (RFC) and to credit the testimony of the vocational expert in response to a hypothetical question that accurately reflected plaintiff's credible limitations.  Each argument is addressed below.

**I. Failure to Secure Treatment Records and Utilize the Services of a Medical Advisor**

While it is the claimant's burden to prove that he or she is disabled, it is well established that the ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See 20 C.F.R. §§ 404.1512(e). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully develop the record, especially where the claimant is not represented. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). See also De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop the record is present even if claimant is represented by counsel); Brown, 713 F.2d at 443 (where the ALJ feels that more evidence, or more reliable evidence, is necessary, the ALJ has a duty to fully and fairly develop the record, even when claimant is represented by counsel). However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, plaintiff argues that the only record in the file regarding her knee injury in 1991 and knee surgery in 1992 is Dr. Barber's report, which references Dr. Ridey's treatment records. Plaintiff contends that the ALJ should have obtained Dr. Ridey's treatment records, particularly after she advised the ALJ at the first hearing that the administrative file did not contain all of her medical records and that her application for disability benefits had provided information about the knee surgery performed at Doctor's Hospital in Pinole, California in 1992 and about an MRI of her knees done by Dr. Ridey in 1991. Plaintiff asserts that Dr. Ridey's treating records were never requested or received, and the ALJ rejected her claims of severe knee pain based on the absence of medical evidence supporting such claims. Plaintiff emphasizes that Dr. Ridey's treatment records were important because she needed to prove disability as of March 31, 1992, her last date insured. She argues further that under these circumstances the ALJ was required to obtain medical expert opinion as to the onset date of her disability.

The court finds plaintiff's arguments unpersuasive for several reasons. First, the disability report form completed by plaintiff asks "who may have medical records or other information about your illnesses, injuries or conditions," however plaintiff did not identify Dr. Ridey as one of her doctors or her surgeon, but merely indicated in the section regarding medical tests that she had an MRI of her knee in 1991 done by "Dr. Reedy." (Tr. at 83-89.) The information provided by plaintiff was minimal. In any event, the record reflects that Social Security staff requested medical records from Dr. Ridey and Doctors Hospital in May 1995 in connection with plaintiff's prior disability application. (Tr. at 212-13.) The case activity log reflects follow-up and reissued requests but no records were received. (Tr. at 211-12.) Social Security staff again requested medical records from Doctors Hospital, now known as Doctors Medical Center, in February 2004 and sent a second request, but did not receive any records. (Tr. at 206.) The court cannot find that there was a failure to request the treatment records related to plaintiff's knee surgery.

Beginning at the first hearing, the ALJ repeatedly urged plaintiff to obtain her medical records because any attorneys she consulted for possible representation would need to look at those records. (Tr. at 340-42.) At the second hearing, eight months later, plaintiff admitted that she had seen at least one attorney who would not take her case without documentation, specifically, her medical records from 1992, and stated that she had filled out papers to have records sent to her but had not received any from the hospitals or from Kaiser. (Tr. at 330-31.) The ALJ explained that the attorneys needed to see records as far back as indicated because plaintiff needed to prove she was disabled before her date last insured. (Tr. at 333.) The ALJ again urged her to pursue the records so she could obtain the services of an attorney. (Tr. at 334.) At the end of the third hearing, the ALJ once again urged plaintiff to get her medical records. (Tr. at 325-26.)

At the fourth hearing, plaintiff's counsel indicated that he had obtained a copy of the administrative record and discovered two documents in an "unexhibitized section" of the file,

7

one of which was a significant medical record. (Tr. at 278-79.) That record was the report of Bryan Barber, M.D., the orthopedic surgeon who examined plaintiff on June 29, 1992, in connection with her worker's compensation claim based on her knee injuries. (Tr. at 265-75.) The ALJ directed the clerk to move Dr. Barber's report into the medical records section of the file. (Tr. at 279.) Counsel submitted the medical records of Eh R. Mu, M.D., for the period from August 2, 1991 to August 2, 2006, and those records were added to the administrative record as well. (Tr. at 215-32.) The ALJ asked plaintiff and counsel whether all of the medical records were in the Social Security file, and each responded that, as far as he or she knew, all the records were in the file. (Tr. at 294.) At the conclusion of the hearing, the ALJ stated, "[W]e will go ahead and close the hearing . . . there being no further medicals," and neither plaintiff nor her attorney objected. (Tr. at 318.)

The court also finds that Dr. Barber's orthopedic evaluation is thorough and includes: summaries of Dr. Ridey's initial evaluation of plaintiff on September 20, 1991; Dr. Ridey's operative report for the surgery performed on February 13, 1992; and Dr. Ridey's post-surgery referral of plaintiff to physical therapy and discharge of plaintiff from his care on February 28, 1992, all in context of the entire circumstances of plaintiff's knee injuries and the treatment thereof. (Tr. at 266-68.) In light of Dr. Barber's evaluation, it appears improbable that Dr. Ridey's treatment records would establish that plaintiff was disabled due to knee pain as of March 31, 1992, and plaintiff's conclusory argument to the contrary is not persuasive.

Finally, the record does not appear to contain ambiguous evidence, and there is no indication that the ALJ found the record inadequate to allow for proper evaluation of the evidence. In the absence of ambiguous evidence or an inadequate record, the ALJ was not required to develop the record further on the issue of plaintiff's knee pain. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence or the ALJ's own finding that the record is inadequate to allow proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding

that the ALJ satisfied his duty by keeping the record open so that it could be supplemented by the physician's response to further inquiry into the basis for his opinion).

While the ALJ had a duty to develop the record, it was plaintiff's burden to prove that she was continuously disabled from on or before March 31, 1992, her last date insured, to January 13, 2004, her disability application date. The ALJ found significant work limitations, as reflected in plaintiff's RFC as determined by the ALJ, but concluded that plaintiff was not disabled, as defined in the Social Security Act, at any time from the alleged onset date through the date last insured. (Tr. at 20, 24.) An ALJ is not required to obtain medical expert testimony for the purpose of determining onset date of disability unless the claimant is found to be disabled. Sam v. Astrue, 550 F.3d 808, 809 (9th Cir. 2008) ("We hold that SSR 83-20 does not require a medical expert where the ALJ explicitly finds that the claimant has never been disabled . . . .").

The court finds that plaintiff is not entitled to summary judgment on her claims that the ALJ failed to develop the record and failed to utilize the services of a medical advisor.

## II. Failure to Credit Plaintiff's Statements About Functional Limitations

It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In such circumstances, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d at 1273, 1281 (9th Cir. 1996)).

In evaluating a claimant's subjective testimony regarding pain and the severity of her symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. Absent affirmative evidence of malingering,

however, the reasons for rejecting a claimant's testimony must nonetheless be clear and convincing. Morgan, 169 F.3d at 599.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner, Morgan, 169 F.3d at 599. Determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

In the present case, the court finds that the ALJ fairly summarized plaintiff's testimony. He found that her medically determinable impairments could reasonably be expected to produce symptoms of pain in her lower back, hips, shoulders, and hands but that her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. at 21.) He found that plaintiff's asthma appeared to be adequately controlled with medications and breathing devices, as there were no records of hospitalization, emergency room visits, or other asthma-related medical crises. (Tr. at 21-22.) He found that her allegations of low back pain and problems with her shoulders, particularly with reaching with her left arm, were not well documented.

Despite evidence that plaintiff was in an automobile accident on May 25, 1988 and complained of recurrent back problems, there was no evidence of any subsequent evaluation or treatment, other than a single chart note in 1991 merely reflecting that plaintiff had reported chest and shoulder pain. (Tr. at 21.) Similarly, plaintiff's testimony about difficulty reaching with her left arm and difficulty fingering, feeling, and writing with both hands was not supported by any medical evidence. The ALJ nonetheless credited plaintiff's testimony to the extent of finding a slight impairment to her ability to reach overhead with her left non-dominant upper arm

and to perform fine and gross manipulative tasks with hands and fingers. (Tr. at 22.) The ALJ also credited plaintiff's testimony about back pain, despite the fact that her testimony was supported only by occasional reported complaints of back and neck pain and an MRI taken eight years after her last date insured, with no evidence of follow up or testing. (Id.)

With regard to plaintiff's complaints of knee pain, the ALJ relied on Dr. Barber's medical report and recommendation in 1992 that plaintiff undergo a work-hardening program, including water aerobics, isometric and isotonic exercises for the lower extremities, and a weight reduction program, and that she be "weaned from her cane and walker, and she should not wear knee braces." (Tr. at 22.) In light of Dr. Barber's opinion that plaintiff could accomplish these goals within three to six months, the ALJ concluded that plaintiff's knee surgery would have had limiting effects but that her knees would have improved within 12 months to the point that she could perform sedentary work. (Id.) The ALJ noted that plaintiff worked briefly at a sedentary job in September 1992 and gave no indication that she quit that job because of knee pain. (Tr. at 23.) Plaintiff reported that in April 2001 she worked briefly again but stopped because of problems with her asthma, hip pain related to her sciatic nerve, and swelling of her feet, not because of her knees. (Tr. at 81.) The ALJ also considered plaintiff's complaints of pain arising from problems with her feet, including plantar fasciitis and heel spurs, but found that plaintiff's doctor had prescribed Motrin and Tylenol for tendinitis and a heel spur when plaintiff complained of these problems on August 9, 1990, but there were no other records of treatment for these conditions. (Tr. at 19, 23.) In September 1992, plaintiff complained of bilateral swelling in her feet and ankles but did not indicate pain when walking, and her doctors recommended that she take walks during her work breaks. (Id.) For all of these reasons, the ALJ discounted plaintiff's complaints of knee pain.

An ALJ is not required to believe every allegation of disabling pain. Fair, 885 F.2d at 603. The degree of pain asserted by a claimant need not be the inevitable result of an objective medical impairment, but the pain must be associated with an impairment that could

11

give rise to the symptoms.  Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  An ALJ may disregard excess-pain testimony or discount it when there is a failure to submit objective medical findings establishing a medical impairment that could produce the pain described.  Id.  In the present case, the court finds that the ALJ properly disregarded excess-pain testimony arising from complaints and conditions that were not found to be medically established impairments that could give rise to the symptoms alleged by plaintiff.

With respect to daily activities, it is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603.  See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").  In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities.  20 C.F.R. § 404.1572(c).  See also 20 C.F.R. § 404.1545(e).  However, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ must make specific findings relating to the daily activities and their transferability in order to conclude that the activities warrant an adverse credibility determination.  Id.

Here, the ALJ noted plaintiff's testimony that she could not work because of asthma, lower back pain, hip pain, shoulder pain, and tingling feelings in her hands.  Plaintiff testified that, as a result of these conditions, she cannot stand for more than 20 minutes at a time or sit for more than 30 minutes at a time or walk for more than approximately a block. (Tr. at 21.)  The ALJ contrasted that testimony with plaintiff's testimony that she is able to perform most of the typical household chores, including preparation of three meals a day for her husband

and herself, washing dishes three times a day, sweeping or vacuuming once a week, dusting once a month, laundry three times a month, making the bed daily, and changing sheets on the bed weekly. She goes grocery shopping once a week and attends church twice a week. (Id.) The ALJ found that this level of activity was not inconsistent with a restricted range of sedentary work.

The court finds that the ALJ's analysis of plaintiff's testimony is supported by substantial evidence in the record and by the application of proper legal standards. The ALJ credited most of plaintiff's testimony and gave clear and convincing reasons for rejecting the remainder. For these reasons, the court finds that plaintiff is not entitled to summary judgment on her claim that the ALJ failed to properly evaluate and credit her testimony regarding the nature and extent of her functional limitations.

**III.  Failure to Properly Assess RFC and Credit Vocational Expert Testimony**

Plaintiff's final argument is that the ALJ failed to properly assess her RFC and failed to properly credit the testimony of the vocational expert (VE) in response to a hypothetical question that accurately reflected her credible limitations. These contentions are grounded on the arguments already addressed above and are therefore unpersuasive due to the court's findings rejecting those arguments.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes, 276 F.3d at 460. When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). See also Vertigan, 260 F.3d at 1049. It is the claimant who bears the burden of proof of establishing his or her RFC. Yuckert, 482 U.S. at 146 n.5.

Here, the ALJ determined that through March 31, 1992, plaintiff's severe impairments were asthma, injury to her lower back, and injury to her shoulders that affected her

ability to reach with her upper extremities. (Tr. at 18.) Upon consideration of all of plaintiff's alleged impairments and the entire record, the ALJ determined that through March 31, 1992, plaintiff had the residual functional capacity (RFC) to perform sedentary work doing simple, routine repetitive tasks, provided that she be allowed to take asthma medication as needed during the work day and further provided that the work accommodate slight limitations on her ability to reach overhead with her non-dominant left arm and her ability to perform fine and gross manipulation with her hands. (Tr. at 20.) The court finds that the ALJ properly determined plaintiff's RFC based on all of the relevant medical evidence in the record.

The ALJ determined that plaintiff could perform her past relevant work as a receptionist but also made an alternative finding based on VE's testimony that there were other jobs she could perform that existed in significant numbers in the national economy. The ALJ's alternative finding was based on a hypothetical question that incorporated all of plaintiff's limitations as found by the ALJ. See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (holding that the ALJ properly relied on VE's responses to hypothetical question that contained all limitations found credible by the ALJ and supported by substantial evidence in the record).

The court finds that plaintiff is not entitled to summary judgment on her claim that the ALJ failed to properly assess her RFC and failed to credit the testimony of the VE in response to a hypothetical question that reflected plaintiff's limitations.

## CONCLUSION

The court's scope of review in considering decisions granting or denying Social Security benefits is limited. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the Secretary's decisions granting or denying Social Security disability benefits.") It is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's. Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987). If there is conflicting evidence supporting a finding of

either disability or nondisability, the ALJ may resolve a conflict among experts so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230. See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").

The record in this case contains some evidence of disability. However, there is substantial evidence of nondisability. The ALJ considered all of the evidence and set forth a rational interpretation of that evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). The ALJ properly discharged his responsibilities of determining credibility and resolving any conflicts or ambiguities in the testimony and evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Accordingly, IT IS ORDERED that:

1. Plaintiff's March 11, 2009 motion for summary judgment (Doc. No. 23) is denied;

2. Defendant's April 10, 2009 cross-motion for summary judgment (Doc. No. 24) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: September 25, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/carranza0934.order